Tobias Olson, Administrator, *vs.* St. Paul, Minneapolis & Manitoba Railway Company.

January 10, 1888.

Master and Servant—Railway—Fellow-Servants.—The foreman of a gang of section or track-men, engaged in the discharge of his ordinary duties in the course of his employment, is a fellow-servant with them.

Same—Risks of Employment—Running Special Trains without Notice.—Where it is the established practice and one of the rules of a railway company to run special or irregular trains at any time, without notice in advance to station-agents or section-men, who are required to govern themselves accordingly, and it appears from the evidence that an engine with snow-plough is a train of that class, *held*, that sending out such a train over the road, in a storm, without such notice, was not neg-

ligence, but that the risks to track-men attending its use are among those assumed by such employes, if they are informed of the rule, or if, from their observation and knowledge of the practice of the company in respect to running such trains, they knew, or ought to have known, in the exercise of ordinary intelligence and reasonable prudence, that such a train might be expected.

Same—Knowledge of Danger.—Upon the evidence in this case, *held* error for the court to refuse to charge the jury that if the injured employe knew of such usage and practice of the company, he could not recover.

The plaintiff, as administrator of the estate of Ole Olson Hag, deceased, brought this action in the district court for Grant county, to recover $5,000 damages occasioned by the negligence of the defendant in the operation of a snow-plough, resulting in the killing of Hag. The action was tried before *Baxter*, J., and a jury, and plaintiff had a verdict of $4,000. Defendants appeals from an order refusing a new trial.

*W. E. Smith* and *R. B. Galusha*, for appellant.

*J. W. Reynolds*, for respondent.

VANDERBURGH, J. The plaintiff's intestate was one of a gang of section-men employed by defendant on the line of its road, under the direction of a foreman who had charge of the men on the particular section where he was killed by a snow-plough, while engaged with others with a hand-car on the track. They appear to have been engaged in their ordinary work under the direction of the foreman, who was present with them, and who was also killed by the same accident. They had been shovelling snow, and were at the time returning to the section-house with the car, in the midst of a severe storm of snow and wind, in consequence of which they did not hear or see the approach of the engine and snow-plough in time to make their escape.

1. The foreman was a fellow-servant with the deceased, and in the discharge of his duties did not represent the master as such, and for his acts or omissions in the discharge of such duties in the course of his employment, the defendant was not liable. *Cook* v. *St. Paul, M. & M. Ry. Co.*, 34 Minn. 45, (24 N. W. Rep. 311;) *Brown* v. *Minn. & St. Louis Ry. Co.*, 31 Minn. 553, (18 N. W. Rep. 834;) *Brown* v. *Winona & St. Peter R. Co.*, 27 Minn. 162, (6 N. W. Rep. 484;) *Fraker* v.

*St. Paul, M. & M. Ry. Co.*, 32 Minn. 54, (19 N. W. Rep. 349;) *Capper* v. *Louisville, etc., Ry. Co.*, 103 Ind. 305, (2 N. E. Rep. 749,) and cases cited.   We are not now speaking of the duty of the master to make known in some suitable way to the servant the existence of risks not known to him, and which he has not impliedly assumed in his contract of employment.   *Atlas Engine Works* v. *Randall*, 100 Ind. 293, (50 Am. Rep. 798.)

2. The admissions in the reply eliminate from the case all questions of negligence on the part of the company in respect to the running and operation of the engine and snow-plough, and affirm that the usual and proper signals were given on approaching the station, and that "the said engine and snow-plough were run and operated in a careful and prudent manner, and at a proper rate of speed, by defendant's servants then in charge thereof, and that they were personally guilty of no negligence in the premises," so that the only remaining questions are whether the defendant owed the duty to the section-men to give them special warning of the fact that the snow-plough was sent out over that division of the road, or had failed in its duty to inform the men of its rules permitting wild or extra trains to be run without special notice or warning to the men of their approach, and requiring them to govern themselves accordingly.

3. The rules of the company referred to, and which were put in evidence, are as follows: "Rule 66. No notice will be given to station-agents of the passage of irregular trains, and they will govern themselves accordingly."  "Rule 70. Track and bridge-men must use the utmost caution at all times, as, under the telegraphic system of running trains, a train may be expected at any moment.   No notice whatever will in any case be given of the passage of extra trains.   Foremen will govern themselves accordingly."

The evidence in the case shows that regular trains run according to schedule time, and that wild, special, or extra trains run at any time, and that an engine and snow-plough is a train of this class, of whose approach no notice is given under the rules and practice of the company.   Now, if the deceased and his fellow section-men knew, or from their observation and information about the running of the trains ought, in the exercise of ordinary intelligence and prudence,

to have known, that an extra or wild train might come over the road at any moment, without notice, they must be deemed to have assumed this as one of the hazards incident to the employment, (*Railway Co.* v. *Leech*, 41 Ohio St. 388; *McGrath* v. *New York & N. E. R. Co.*, 18 Am. & Eng. R. Cas. 5; *Penn. R. Co.* v. *Wachter*, 60 Md. 395;) and we are unable to see why there should be any exception in the case of a snow-plough, or that the act of sending out the snow-plough over the line, in this particular instance, was in itself negligent or wrongful under the rules referred to. There does not seem to be any reason why at that season, and in such a storm, a snow-plough might not with as much reason be expected as any other extra train. The employes of the company are presumed to understand the nature, use, and operation of snow-ploughs, and that they are liable to be run frequently over the road in the proper season, as well during storms as at other times; and if any extra risk attends their use it must be met by corresponding care and caution on the part of the men. *International, etc., Ry. Co.* v. *Hester*, 64 Texas, 401, (21 Am. & Eng. R. Cas. 535;) *Hughes* v. *Winona & St. Peter R. Co.*, 27 Minn. 137, (6 N. W. Rep. 553.)

4. This brings us to the consideration of the evidence on the question of the notice or knowledge which the deceased had in respect to the established rules and usage of the company in running extra trains without notice. The complaint alleges generally that the "defendant negligently, wrongfully, and suddenly, without previous warning, notice, or announcement, ran its snow-plough over its line from an easterly direction" upon and over the deceased. This the answer denies, and sets up and relies upon the existence of the rules above quoted. It is undoubtedly the rule that the burden rests on the plaintiff asserting a breach of duty by the defendant to prove it. *Fraker* v. *St. Paul, M. & M. Ry. Co.*, 32 Minn. 54, 59, (19 N. W. Rep. 349.) But where, as in this case, the defendant admits that the train was run without any precaution or notice in advance that a wild train was to be expected, and, to rebut any presumption of negligence in the premises, relies upon its rule dispensing with such notice, it is incumbent on the defendant, in order to give effect to it, to show that its employes were duly informed of the rule, or have

such knowledge of the usage and practice of the company in the premises as would be equivalent thereto, and fully acquaint them with the dangers arising from this particular cause. There may, perhaps, be some question whether this issue was fairly tendered by the complaint; but the defendant appears to have so treated it, and the case seems to have been tried on that theory. As the foreman was also killed in the collision, evidence had to be obtained from other sources. How long the deceased had been engaged in this service does not appear, but the evidence shows that he must have been so engaged for a week at least before the accident, but it fails to show that the rules were ever shown or furnished to him, and there was some evidence tending to show they were not. By the terms of rule 70, (and the same fact appeared by other evidence,) it was undoubtedly the duty of the foreman to inform the men under him that trains might be expected without notice, and to warn them of the danger; and as this was the duty of the master, he must *pro hac vice* be held to represent the master, and his neglect or omission of this duty would be that of the master. *Slater* v. *Jewett,* 85 N. Y. 61, 71. But if the section-men acquired knowledge of the facts and risks from other sources, and had learned that the rule and practice of the company were to send out extra trains without notice, and that section-men were obliged to be always on the lookout therefor, then, by continuing in the service, they would be considered as voluntarily assuming the risks from this cause as well as others connected with the employment. *Haskin* v. *New York Central, etc., R. Co.,* 65 Barb. 129, 134. The evidence tended to show that a quarter or more of the trains sent out are specials or extra,—despatched without notice, —and that such is the uniform practice of the defendant; and that during the month of February, 1884, to the date of the accident, such trains over that section of the road averaged one or more each day; and also that the exigencies of the business and the impracticability of notifying section-men in advance, owing to the nature of their work, extending over miles of track, and often remote from telegraph stations, obviously rendered it necessary to dispense with notice, and to adopt the present uniform practice in conformity with rule 70. And this fact itself, and the nature of the employment, would natur-

ally suggest the importance of extra caution on the part of the men, and a reason for the rule. We think, therefore, there was evidence for the consideration of the jury tending to prove that the deceased had notice of the usage of the company, and that it was error for the court to refuse the defendant's first request to charge the jury, to the effect that if they should find that the deceased knew of such usage and practice of the company, he could not recover. There must therefore be a new trial.

Order reversed, and new trial granted.