MARTIN LARSON *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY
COMPANY.

June 9, 1890.

43  423
51  198

Railway—Section-men—Assumption of Risk of Extra Trains.—A sec-
tion-man who had worked more than three months on the track of a rail-
road, where about one-third of the trains passing over the same were
irregular or extra trains, not running on schedule time, *held* to be charge-
able with notice of the practice to run such trains, and hence that he as-
sumed the risk incident to the service from that cause.

Same—Negligence—Evidence of General Custom.—Proof of a general
custom as to the running of such trains is competent, as affecting the
question whether it is negligence to so operate them.

Evidence—Waiver of Objection.—An admission that an office entry of
the running of specified trains was "the record of the trains," although
its reception in evidence was objected to, *held* a waiver of such qualify-
ing proof as might otherwise have been necessary preliminary to the in-
troduction of the evidence.

Appeal by plaintiff from an order of the district court for Grant
county, refusing a new trial after a trial before *Holland,* J., and a
dismissal ordered at the close of the evidence.

*J. W. Reynolds,* for appellant.

*M. D. Grover,* for respondent.

DICKINSON, J. This is an action for the recovery of damages for a
personal injury suffered by the plaintiff in the same accident which
resulted in the action of Olson against this defendant, our decision
in which is reported in 38 Minn. 117, (35 N. W. Rep. 866.) The
facts of the case now before us are for the most part the same as
those stated in the opinion above cited, and need not be here re-
peated; but some facts peculiar to this case will be referred to. The
plaintiff was one of the section-men—three in number, including the
foreman—who, in the discharge of their duty as the defendant's serv-
ants, were pushing the hand-car westward, during a westerly snow-
storm, when they were overtaken by the engine and snow-plough
coming from the east, and running "wild," that is, not on the sched-
ule time of any train. The plaintiff's two companions were killed.

After the evidence had all been presented the court dismissed the action. In this appeal from an order refusing a new trial, the principal question to be considered is whether upon the whole case it ought to have been submitted to the jury.

It may be taken as settled that it was the duty of the defendant to inform its section-men, unless they had already been advised of the fact, of its practice to run irregular trains without special notice to them. *Olson* v. *St. Paul, M. & M. Ry. Co., supra.* But it is also to be considered that if one in such employment had in any other manner learned of this practice, or if in the exercise of common intelligence and prudence in his employment he ought to have learned it, it would be presumed that he had acquired such knowledge, and had assumed that risk, or else, if he had not thus learned the fact, that he had been guilty of such negligence on his own part as should preclude a recovery. *Olson* v. *St. Paul, M. & M. Ry. Co., supra.* The testimony of the plaintiff went to show that he had not received actual notice of this practice, and it remains to be considered whether the case showed either that he had acquired knowledge of the fact by other means, or that he was chargeable with negligence if he had not done so, and whether this appeared so conclusively that the court was justified on that ground in refusing to submit the case to the jury. We are of the opinion that the dismissal of the action was justified upon this ground.

The plaintiff had been employed in this work but a week immediately preceding the accident, during which time he had lived with the section-foreman at a house on the line of the road. But more than two years before he had been for some three months in the same employment, on this same section of the road, and boarded at the same section-house. During that time about one-third of the trains over that section of the road were irregular or wild trains; and during the week of the plaintiff's employment, immediately preceding the accident, there were nine trains of that character. The plaintiff's constant employment was on and beside the track over which the trains were operated. He went over his section in a hand-car, on the track. The general nature of the danger to be apprehended from the passing trains was so obvious that it could not but have engaged

the thoughts and attention of the plaintiff, or of any man in that employment.   He knew that his very life depended upon looking out for and keeping out of the way of any trains that might pass over the road.   While his testimony is to the effect that he supposed that all were regular trains, it is hardly credible that he should have labored daily for more than three months on the track where one-third of the trains were irregular, and of the running of which he could not have been regardless, without having learned this fact.   The times and manner of the running of them were to him the most important circumstances connected with his service, and to which the consciousness of his danger from that source must have directed his attention from the very first.   It was *the* great and perfectly obvious danger connected with that service.   And not only was he placed under the immediate and obvious necessity of attending to this matter for his own safety, but he was compelled to be observant of the times of passing trains in order that the track might be in a condition to allow them to pass without danger to the trains and to passengers.   The plaintiff testified that a part of the time he was engaged putting in new ties, and that this could not be done when trains were passing.   (The section crew were provided with signals and torpedoes to arrest trains when necessary.)   Again, the plaintiff must have been aware of the impossibility of even regular trains always running on schedule time, and that an accident or a storm might at any time necessarily lead to the running of trains without regard to schedule time.   Such considerations lead to one or the other of these two conclusions : either he must have observed the times of running the trains,—in which case he must have discovered that a considerable proportion were not regular, but extra and irregular trains,—or, if he did not give diligent attention to the subject, then he failed to exercise that common degree of care which the known and constant danger of his situation required him to exercise for his own protection.   In either case he was not entitled to recover.   But notwithstanding the plaintiff's testimony, to the effect that he did not know that irregular trains were run, the incredibility of this testimony is not only suggested by the considerations to which we have referred, but also by his other testimony.   He says that "when we were on the hand-car

we *always* kept a lookout for trains;" and that on this occasion, although these men were expecting a freight train from the west, they also kept a lookout to the eastward to see whether a train might be coming from that direction. "Hag and I kept a lookout in that way." By his own testimony it would seem that the plaintiff's conduct was regulated by the consciousness or understanding that an irregular train might come from the east, as this engine and snow-plough did. Upon the whole case, we think it so clear that the plaintiff must have been deemed to have known this danger, and to have assumed the risk, or else that he was chargeable with negligence in not having observed it, that the court was justified in refusing to present the case to the jury.

Proof of the custom of this defendant, and of other railroads generally, to run trains at irregular times and without special notice, was relevant to the issue in this case, and was competent. Proof of the general custom was competent in support of the claim that this was not negligence. The practice of this company was competent. for it tended to show that the plaintiff, after so long a period of service, must have learned of this practice, and this was one of the risks of his employment.

The defendant offered in evidence its train record, showing the number of trains, regular and extra, run over the road at the time in question. The plaintiff expressly admitted that this was "the record of the trains," but objected to its admission "on the ground that it was incompetent, irrelevant, and immaterial for the purpose of justifying the defendant in committing the injury complained of, or for any purpose." The assignment of error in respect to the admission of this evidence cannot be sustained. The fact sought to be thus proved was material and relevant, for reasons appearing in the former part of this opinion. The express admission of the plaintiff, and the form of his objection, may be fairly regarded as a waiver of any objection based upon the fact that qualifying proof had not been presented to justify treating the record as admissible evidence of the facts there entered. It would naturally be so understood by adverse counsel and by the court.

Order affirmed.