GEORGE B. FLANDERS vs. CHICAGO, ST. PAUL, M. & O. RY. CO.

Argued Oct. 14, 1892.   Decided Oct. 29, 1892.

Negligence—Contributory Negligence.

The negligence charged against the defendant was building a section house in such dangerous proximity to a side track that the eaves struck the plaintiff (a brakeman) while descending the ladder on the side of a moving freight car. The contributory negligence charged against the plaintiff was attempting to descend the ladder at an improper place. *Held*, that on both questions the evidence presented a case for the jury.

Evidence of Custom.

In certain cases proof of custom is evidence as to whether an act is negligent. Following former decisions.

Appeal by defendant, The Chicago, St. Paul, Minneapolis & Omaha Railway Company, from an order of the District Court of Ramsey County, *Brill*, J., made June 27, 1892, refusing a new trial.

This action was brought by the plaintiff, George B. Flanders, against the defendant Railway Company, to recover for personal injuries received by him as stated in the opinion. Issue was joined, and the case tried March 29, 1892. The jury rendered a verdict for the plaintiff and assessed his damages at $10,000. The defendant made a motion for a new trial, which was denied, and it appeals.

*Thos. Wilson, S. L. Perrin*, and *C. D. & Thos. D. O'Brien*, for appellant.

The first question is, was the defendant negligent in maintaining the section house in the situation and position that it occupied at the time of the injury? Beyond the relative situation of the section house and the switch, there was nothing to show negligence. There was no evidence as to the distance from the track at which section houses are necessarily or customarily erected, and no evidence as to the point at which a brakeman should undertake to descend from the car under the circumstances of this case or under any conditions whatever. Upon the question of plaintiff's own negligence, we have the fact, first, that he was an experienced railroad man; next, that

all of his conduct and actions which led to his injury were absolutely beyond the control of defendant and originated with the plaintiff, and with him alone. He was not required, either by the rules of the company or by any necessity of the case, to go down the ladder so long before the switch was reached. The following are illustrative cases upon the questions of plaintiff's and defendant's negligence: *Robel* v. *Chicago, Mil. & St. P. Ry. Co.*, 35 Minn. 84; *Franklin* v. *Winona & St. P. R. Co.*, 37 Minn. 409; *Oleson* v. *Chicago, B. & N. R. Co.*, 38 Minn. 412; *Smith* v. *Winona & St. P. R. Co.*, 42 Minn. 87; *Johnson* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 53; *Carroll* v. *Williston*, 44 Minn. 287; *Bengtson* v. *Chicago, St. P., M. & O. Ry.*, 47 Minn. 486; *McKee* v. *Chicago, R. I. & P. Ry. Co.*, 83 Iowa, 616; *Pennington* v. *Detroit & G. H. & M. Ry. Co.*, 90 Mich. 505.

The admission of the testimony as to custom was erroneous.

*Munn, Boyeson & Thygeson*, for respondent.

The evidence as to custom was admissible on three grounds: (1) To show that plaintiff was acting within the line of his ordinary duty; (2) as bearing on the question of his contributory negligence; (3) as bearing on the question of defendant's negligence, as to whether it could have anticipated the injury. *Doyle* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 79; *Larson* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 423; *O'Malley* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 289; *Kelly* v. *Southern Minn. Ry. Co.*, 28 Minn. 98; *Kolsti* v. *Minneapolis & St. L. Ry. Co.*, 32 Minn. 133; *Fay* v. *Minneapolis & St. L. Ry. Co.*, 30 Minn. 231; *Caswell* v. *Boston & Worcester R. Co.*, 98 Mass. 194; *Dorsey* v. *Phillips & Colby Const. Co.*, 42 Wis. 583; *Whitsett* v. *Chicago, R. I. & P. Ry. Co.*, 67 Iowa, 150.

On the questions of negligence and contributory negligence we cite the following authorities: *Johnson* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 53; *Chicago & Ia. Ry. Co.* v. *Russell*, 91 Ill. 298; *Chicago, B. & Q. Ry. Co.* v. *Gregory*, 58 Ill. 272; *Kearns* v. *Chicago, M. & St. P. Ry. Co.*, 66 Iowa, 599; *Houston & T. Ry. Co.* v. *Oram*, 49 Tex. 341; *Georgia Pacific Ry. Co.* v. *Davis*, 92 Ala. 300; *Kelleher* v. *Milwaukee & N. R. Co.*, 80 Wis. 584; *Penn. Co.* v. *McCormack*, 131 Ind. 250; *Babcock* v. *Old Colony R. Co.*, 150 Mass. 467; *Fre-*

*denburg* v. *Northern Cent. Ry. Co.*, 114 N. Y. 582; *East Tenn., V. & G. Ry. Co.* v. *Thompson*, 94 Ala. 636; *Robel* v. *Chicago, M. & St. P. Ry. Co.*, 35 Minn. 84.

MITCHELL, J. As is usual in actions of this class, the two main issues in the case were: (1) Was the defendant guilty of negligence? (2) Was the plaintiff guilty of contributory negligence?

On both points the evidence presented a case for the jury. There was really no conflict of evidence, all the material facts and circumstances being practically undisputed.

At the date of the accident the plaintiff was in the employ of the defendant as a brakeman on a freight train which passed through Shakopee. He had been in defendant's employ only three days, and was not familiar with the route, having made only one previous trip over the road, in which he had passed through Shakopee in the night. At that place the defendant had a side track running from the main track westerly to a stock chute and cattle pen. On the same side of the track as the cattle pen, and some two hundred feet east of it, stood a section house, so close to the track as to leave only between seventeen and eighteen inches between the eaves of the building and the side of a passing car, and only between thirteen and fourteen inches between the eaves and the rounds of the ladder on the side of a car. On the same side of the track, and from three hundred to three hundred and fifty feet further east, was the switch used in getting cars back and forth between the main track and the side track. On the day in question (November 27th) the train on which plaintiff was employed reached Shakopee about four o'clock in the morning; it being still dark, and the weather cloudy and moonless. It was necessary to set out at the cattle pen a car load of cattle, which was the third car from the engine, and for that purpose three cars were detached from the train, and backed in onto the side track, and run west until the cattle car was "spotted," and cut off at the cattle pen. The engine, with the other two cars, then started back east towards the switch for the purpose of going out again onto the main track. The plaintiff, who was "head brakeman," was on top of the forward car. While the cars were still in

motion, and going at the rate of four or five miles an hour, the plaintiff, when nearly opposite the section house, (of the existence of which he was ignorant,) commenced to descend the ladder on the side of the car for the purpose, as was his duty, of throwing the switch as soon as the cars passed it.    While in the act of thus descending he was struck by the eaves of the section house, and thrown upon the ground, and sustained the injuries complained of.

The negligence charged against the defendant was placing the section house in dangerous proximity to the track.    On the other hand, the defendant claims that this section house was so far distant from the switch that brakemen had no occasion to attempt to descend the sides of cars at that place; that, consequently, it was not to be reasonably anticipated that they would do so, and therefore the location of the section house at that place in such proximity to the track was not negligent.    The defendant also claimed that the plaintiff himself was guilty of negligence in (1) attempting to descend the ladder while the cars were still in motion; (2) doing so at an improper and unnecessary distance from the switch, and where he had no right to assume that it was safe for him to do so.

Upon the argument, however, counsel abandoned or disavowed the first, and conceded, what is supported by the uncontradicted evidence and by the daily observation of every one, that it is both customary and necessary for brakemen to descend the ladders while the cars are still in motion, so as to be ready to step or jump upon the ground when they reach the switch which they are to throw.    The claim of contributory negligence is therefore now based exclusively upon the second ground, to wit, attempting to descend the ladder at such a distance from the switch.

In view of this, the questions of defendant's negligence and of plaintiff's contributory negligence are so connected and interdependent that they must be considered together; for if brakemen would have no occasion, in the ordinary and proper discharge of their duties, to go upon the ladders at that place, the defendant would not be bound, in the exercise of ordinary care, to anticipate that they would do so.    On the other hand, if it was to be naturally and reasonably anticipated that in the proper performance of their duties

they might do so, then the defendant was bound to place its structures along the track with reference to that fact.

It needs no argument to prove that, if this was a place where the railway company was bound to anticipate that brakemen would have occasion to descend on the sides of cars, it was gross negligence to place this section house in such close proximity to the track.

In view of the now conceded fact, supported, as has been said, by the uncontradicted evidence, that it is necessary for brakemen to descend these ladders, while the cars are still in motion, in order that they may be ready to jump upon the ground to throw the switch the moment they reach it, it is evident that they must commence this descent at some distance from the switch. The evidence is that it would take some thirty seconds to get upon the ladder and make the descent. If the cars are moving at the rate of four or five miles an hour, the descent must necessarily be begun quite a little distance from the switch. While men are busily engaged in duties which require quick action this distance cannot be calculated in advance with mathematical exactness. Moreover, owing to darkness or unfamiliarity with the place, a brakeman may not always know the exact location of the switch, as was the fact in this case. It will also be noted that this was not the main track, but a siding, designed for uses which would necessarily require brakemen to frequently pass up and down the ladders. It does not appear that there was any necessity for placing this structure so near the track, and from the nature of the case there could have been none.

Under all the circumstances the case was one for the jury on both questions.

The evidence of the general custom of brakemen to pass up and down the sides of cars while in motion and jumping off to open and close switches, even if incompetent, could not, in view of the concession made on the argument, already referred to, have been prejudicial to the defendant, but, under the repeated decisions of this court, it was clearly admissible upon the question of plaintiff's negligence. Not that a negligent act will be excused by the fact that it is customary, but proof of custom is evidence, although not conclusive, as to whether the act is negligent. *Kelly* v. *Southern Minn. Ry.*

*Co.*, 28 Minn. 98, (9 N. W. Rep. 588;) *Kolsti* v. *Minneapolis & St. L. Ry. Co.*, 32 Minn. 133, (19 N. W. Rep. 655;) *Doyle* v. *St. Paul, M. & M. Ry. Co.*, 42 Minn. 79, (43 N. W. Rep. 787;) *O'Malley* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 289, (45 N. W. Rep. 440;) *Larson* v. *St. Paul, M. & M. Ry. Co.*, 43 Minn. 423, (45 N. W. Rep. 722.)

We think the evidence was also admissible upon the question of defendant's negligence, for, if such general custom existed, the railway company should have located its structures along the track with reference to it at all places where it might reasonably anticipate that brakemen would have occasion to pass up and down the sides of moving cars.

The assignment of error in disallowing the challenge to a juror during the trial is clearly without merit.

Order affirmed.

GILFILLAN, C. J., absent, took no part.

(Opinion published 53 N. W. Rep. 544.)