[No. 543.   August 16, 1893.]

## ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY, Plaintiff in Error, v. JOAQUIN MARTIN, Defendant in Error.

[No. 535.   August 16, 1893.]

## JOAQUIN MARTIN, Appellee, v. ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY, Appellant.

[Considered and Disposed of Together.]

Writ of Error, or Appeal, Which—Practice Act, 1891, Validity of.— By the practice act of 1891, it was clearly the intention of the territorial legislature that common law causes should be reviewed by writ of error, and not by appeal; and this act is not in conflict with either the organic act or subsequent acts of congress.

Id.—Supersedeas—Filing and Approval of Bond, Sufficiency of.— Where a bond was filed in the court below within the proper time, and approved by the judge of that court, but not indorsed "approved" by the clerk of the supreme court until ninety-two days after the judgment, it was a substantial compliance with the statute, though the correct practice would be to file the bond, and have it approved, and writ of supersedeas issued, within ninety days after judgment.

Id.—Trespass on Case—Liability of Railroad for Negligence of Fellow Servants—Vice-Principals—Evidence.—In an action of trespass on the case, by a section hand against a railroad company to recover damages for personal injuries caused him by its negligence, where it appeared from the evidence that the plaintiff with the foreman of the section gang and another laborer were going to their work earlier than usual, on a hand car, of their own volition, to aid in repairing the railway; that plaintiff took his position upon the hand car in such way as to have his face looking south, but was ordered by the foreman to turn and look north, who said, on a remark of the third man on the car, that a train was coming out of Albuquerque, that he would look out for trains; that there was upon the line of the defendant's road, at the time of the accident, a work train engaged in repairing the road, under the management and control of a conductor

and engineer, upon which was a road master, who had control of the line of the road where the accident occurred; that the work train, shortly after the hand car left the station, also left Albuquerque for the north, and overtook the hand car, running into it, knocking it from the track, and seriously injuring the plaintiff; that the work train was running on telegraphic orders that "every man at work on the track must bear in mind that, in operating the road under telegraph orders, a train may pass at any moment," as to which there was no intimation of negligence, and of which the foreman on the hand car knew, if not the plaintiff; that the foreman hired the section men, directed when they ought to be discharged, and where they should work upon the section, and that he worked in the same way as did the men, and had nothing to do with paying them,—Held: That the plaintiff, and foreman of the section men, and the conductor, and engineer of the work train, were fellow servants, for whose negligence the defendant was not responsible, and could not be held, the evidence not showing any negligence of a superior servant controlling their operations upon the work train and hand car, or either.

ERROR, from a judgment for plaintiff, to the Second Judicial District Court, Bernalillo County. Motion to dismiss the appeal, sustained. Motion to quash writ of error and set aside the supersedeas, denied, and judgment reversed. O'BRIEN, C. J., dissenting.

The facts are stated in the opinions of the court.

W. B. CHILDERS for plaintiff in error.

The plaintiff was a fellow servant with the other servants in charge of the work train. Railroad Co. v. Rider, 62 Tex. 267; Gormley v. Railroad Co., 72 Ind. 31; Collins v. Railroad Co., 30 Minn., 14 N. W. Rep. 60; · Clifford v. Railroad Co., 141 Mass. 564, 6 N. E. Rep. 751; Keyes v. Railroad Co., 3 Atl. Rep. (Pa.) 15; Whalen v. Railroad Co., 8 Ohio St. 249; Coppen v. Railroad Co., 2 N. E. Rep. 749, and note; Buckley v. Gould & Curry Silver M. Co., 14 Fed. Rep. 833; Devinney v. Railroad Co., 17 Ohio St. 198; Railway Co. v. Welch, 72 Tex., 10 S. W. Rep. 529; Elliott v. Railroad Co., 41 N. W. Rep. 758; Fagundes v. Railroad Co., 21 Pac. Rep. 437; Knahtla v.

Railroad Co., 27 Id. 91; McMasters v. Railroad Co., 4 So. Rep. 59; Connelly v. Railroad Co., 35 N. W. Rep. 582; Hervard v. Railroad Co., 26 Fed. Rep. 837; Naylor v. Railroad Co., 33 Id. 801; Easton v. Railroad Co., 32 Id. 893; Van Wickle v. Railroad Co., 32 Id. 278; Randall v. Railroad Co., 109 U. S. 478; Steamship Co. v. Meribunt, 133 Id. 375; 10 Cushing, 228; 5 N. Y. 492; 18 N. Y. 432; 70 Maine, 63; 14 Minn. 363; 38 Am. and Eng. R. R. Cases, 62; 15 Id. 188; 24 Id. 448; 8 Id. 150; 35 N. W. Rep. 866; Parker v. Railroad Co., 50 Am. & Eng. R. R. Cases, 521.

A section boss is a fellow servant with those constituting his gang. The superior servant doctrine is not recognized except in a limited number of states of the Union. C., B. & O. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. Rep. 915; O'Brien v. Dredging Co., 21 Atl. Rep. 324; Knahtla v. Railroad Co., 27 Pac. Rep. (Oregon) 91; Lindvall v. Woods, 42 N. W. Rep. 1020; Hussey v. Coger, 20 N. E. Rep. (N. Y.) 556; Copper v. Railroad Co., 2 N. E. Rep. (Ind.) 749; Yates v. Iron Co., 16 Atl. Rep. (Md.) 286; McGovern v. Mary Co., 50 S. E. Rep. (Ga.) 492; Anderson v. Winston, 31 Fed. Rep. 528; Webb v. Railroad Co., 2 S. E. Rep. (N. C.) 440; Crispen v. B. & B. Bitt., 81 N. Y. 516; Ely v. Railroad Co., 48 N. W. Rep. 222.

"Prima facie all who enter into the employment of a single master are engaged in a common service and are fellow servants, and some other line of demarcation than that of control must exist to destroy the relation of fellow servant. All enter into the service of the same master to further his interest in the one enterprise; each knows when entering that service that there is some risk of injury through the negligence of other employees, and that risk which he knows exists he assumes in entering the employment." B. & O. Railroad Co. v. Baugh, supra; Randall v. B. & O. Railroad Co., supra; Merchant v. Steamship Co., supra.

Neill B. Field for defendant in error.

## OPINION ON MOTIONS.

Fall, J.—The motions filed in these causes, and argued, will be considered and disposed of together By the motion in 543, appellee seeks to have appeal dismissed and supersedeas set aside. By that in 535, defendant in error (also appellee) seeks to quash writ of error. There is but one record; in fact, but one cause. In the court below the defendant in error, or appellee, recovered judgment for $8,000, against the plaintiff in error, or appellant, from which judgment an appeal was asked and granted, bond for supersedeas being fixed at $16,000, which was executed and filed on the thirteenth of February, 1893, judgment having been rendered on the twenty-first of December, 1892. Argument has been quite exhaustive, and two opinions of the lower court upon the points in question have been filed. We are now called upon to decide upon these motions, as fixing a matter of practice under the acts of the territory, and particularly the act of 1891, commonly known as the practice act. By this act, clearly, the legislature intended that common law causes should be reviewed here by writ of error, and not by appeal. The provision is in express terms, and binding unless in conflict with the organic act or subsequent acts of congress, and we can find no such conflict. The legislature possessed the power to provide the method by which causes should be reviewed here, and exercised that power in clear and unmistakable terms. The appeal should be dismissed for the reason that writ of error is the proper method, and the motion to dismiss is sustained upon the first ground of the motion, as well as upon the second, fourth, and fifth grounds.

*Writ of error, or appeal, which: practice act 1891, validity of.*

We find that the bond filed in the court below was filed on the thirteenth day of February, 1893, and was approved by the judge of that court, also being indorsed "approved" by the clerk of this court, on the twenty-third of March, 1893. The conditions of this bond show that it was intended to secure a supersedeas upon writ of error from this court, and the point made in the motion is that, being approved by the clerk here on March 23, 1893, ninety-two days after rendition of judgment, it was filed too late, under the statute fixing ninety days as the period within which bond shall be filed to secure stay of execution. Complaint is also made that the bond was treated by the court below as given in appeal, and fieri facias quashed upon this ground. The statute provides that a writ of error must be sued out within twelve months from date of judgment, and bond given within ninety days to secure supersedeas. In Ex parte French, 100 U. S. 4, the supreme court of the United States decides that a supersedeas and writ of error are two different writs. Clearly, it was the intention of the legislature to so provide, and this has been the practice here. In a cause where the writ of error was sued out, or supersedeas bond given, within ninety days, it has been the practice for the clerk of this court, unless an execution has issued below, simply to notify the clerk of the lower court, informally, that such bond has been filed, which was considered sufficient to prevent issuing of an execution. Where execution had issued then a writ went to the sheriff below, in addition to the writ of error. This practice has doubtless been lax, and, together with the repeated changes in the law and rules of this court, standing under the territorial act as law, has caused confusion. In this case the defendant below, evidently confused as to the proper method of review, first sought it by appeal, and then by writ

*Filing and approval of bond, sufficiency of.*

of error, finally adopting both, and filing a bond in the requisite sum, had either or both been proper, with the intention that the bond should be sufficient in either. The bond, as before said, states that it is for supersedeas in writ of error, and the only question is whether a substantial compliance was had with the statute; such compliance as would secure justice to both parties. Under the law, as it stood prior to 1891, the bond should have been filed in the court below as was first done. Under the latter act, it is to be approved by the clerk of this court, and impliedly filed with him, within ninety days. If this court held, having dismissed the appeal, that no substantial compliance with the statute had been made, and that there was no supersedeas, then the plaintiff below could collect his money, while the case upon review might be reversed, the writ of error pending, and the defendant below be without recourse in event of final success. In case the defendant in error has his judgment affirmed, and the plaintiff is unable to pay the judgment, could the sureties on his bond plead that the same was no bond in this cause, and defeat the collection of the judgment? We think not. The filing of the bond below, conditioned that the plaintiff in error was "about to sue out a writ of error," and its approval by the court, was an act of which the clerk there was compelled to take notice, and was certainly as binding upon him as would have been an informal letter from the clerk here. Further, there is nothing to show, except the approval of the clerk here, that the bond was not filed with him prior to the twenty-third day of March, although we presume that it was so filed on that date. However, we are not prepared to say that the approval of this bond by the clerk of this court was an absolute condition precedent to the issuing of a supersedeas. The citation issued, with writ of error, on the twenty-third, only two days after the ninety days had expired, while

the supersedeas bond had been given, and was among the papers below, more than a month before. We hold that upon the filing of this bond, in pursuance of the express intention of suing out a writ of error, a stay of execution should have been had; that the supersedeas should be considered as such in the writ of error cause, and not on the appeal; that the bond is security to defendant in error; and that while the correct practice is and should be to file the bond, and have same approved, and writ of supersedeas issued by the clerk of this court, within ninety days after judgment, still there has been a substantial compliance with the statute, the provisions of which are sufficiently obscure to cause some confusion. The motion to quash the writ of error and set aside the supersedeas is denied.

O'Brien, C. J., and Seeds and Freeman, JJ., concur.

### OPINION ON MERITS.

Seeds, J.—This is an action of trespass on the case brought by the defendant in error against the Atchison, Topeka & Santa Fe Railroad Company, the plaintiff in error, for certain injuries caused him by the negligence of the said railroad company. There was a trial to a jury, verdict in favor of the defendant in error for the sum of $8,000, and judgment upon the verdict. The railroad company brings the case here by writ of error. The plaintiff in error made a number of assignments of error, but it is only necessary to consider the eighth and ninth in order to pass upon the real questions presented by the record. Those assignments are: "The court erred in not sustaining defendant's motion to instruct the jury to find a verdict in favor of the defendant, and the defendant not guilty. The court erred in refusing to instruct the jury, upon the request of the defendant, to find the defendant not guilty, or

a verdict in favor of the defendant." There is a contention made in the case that as the exceptions to the court's instructions were not made until after the jury retired, and then not specifically to each instruction, this court will not consider them. But as the plaintiff in error asked various instructions which present the questions desired to be passed upon, and these instructions were refused, and properly excepted to at the time, there will be no necessity to pass upon the question of practice raised by the defendant in error. The plaintiff in error asked the following instruction, which was refused: "The jury are instructed that, although they may believe from the undisputed facts in this case that the injury which the plaintiff suffered was caused by the negligence of the foreman of the hand car, or by that of the persons in charge of the work train which struck the hand car, or by both, nevertheless, all of these persons were fellow servants of the plaintiff, for whose negligence the defendant is not responsible, and you should find the defendant not guilty." The exception to this refusal properly brings before us the legal question presented upon the facts of the record. The refusal to give this instruction necessarily involved the assumption that the court gave an instruction which did not sustain this view of the case. Without passing upon the question whether the exception is properly saved by the court's instruction upon the point covered by the instruction asked by the plaintiff in error, and refused, I will set the ruling out, that it may be seen in connection with the above refused instruction: "If you find from the evidence that the plaintiff was employed by the defendant, through the instrumentality of its section foreman, to labor in the capacity of a section hand upon the defendant's railroad, and that the plaintiff, in compliance with the command of the said section foreman, entered upon and into a hand car of the defendant on

the morning of the fifth of June, 1889, for the purpose
of going to his daily labor, and that while the plaintiff
was so going in and upon the said hand car a train of
cars and locomotive engine propelled by steam power,
operated by the agents and servants of the defendant,
was run upon and over said hand car, through the neg-
ligence or recklessness of the agents and servants of the
defendant in charge of said train of cars and locomo-
tive engine, and the plaintiff was thereby injured, and
that the plaintiff at the time of receiving the injury
was exercising due care and caution to protect himself
from injury, the jury should find the issues for the
plaintiff, and assess his damages at such sum as will
compensate him for the injuries received, not exceed-
ing the sum of ten thousand dollars, the amount of
damages claimed in the declaration.''

The facts proven upon the trial were substantially
as follows: The plaintiff below, Martin, at the time of
the accident, was in the employ of the
Atchison, Topeka & Santa Fe Railroad
Company as a section man, and had been
for three months. It was his duty, with
its foreman and others, to aid in repairing the railway.
Upon the day of the accident he and his foreman and
one other laborer left Albuquerque on the hand car, in
the morning, to go to their place of work, north of
Albuquerque. That he took his position upon the
hand car in such a manner as to have his face looking
south, but was ordered by his foreman to turn and
face north. The third man on the car made some
remark that a train was coming out of Albuquerque.
The foreman said he would look out for trains. The
foreman was in charge of a section gang, and hired the
men; directed when they ought to be discharged, and
where they should work upon the section; but he also
worked in the same way as did the other men, and
had nothing to do with paying the men. There was

upon the line of the defendant's railroad between Socorro and Wallace, at the time of the accident, a work train which was engaged in aiding in repairing the railway. It was under the management and control of a conductor, and at the time of the accident there was upon the train a roadmaster, who had control of the line of road where the accident occurred. The work train, shortly after the hand car left the station, also left Albuquerque for the north, backing the train, and overtook the hand car, running into it, knocking it from the track, and seriously injuring the plaintiff, Martin. Where the accident occurred was in a level country, and the track could be seen plainly for a long distance.

It may be conceded that the accident was caused by the joint negligence of the conductor and engineer upon the work train and the foreman upon the hand car. While it would seem that there was no excuse or reason for Martin to entirely rely upon the foreman to look out for trains, and thus to excuse himself from ordinary precaution in affairs of so much possible hazard, yet, as the question of contributory negligence was before the jury, and they found there was none upon the part of Martin, there is nothing before us but the admitted negligence of the company's servants, and its relation to the parties to this record. It is absolutely necessary, for a proper consideration of the legal questions presented by the record, to thoroughly eliminate all possible collateral questions. Corporations of every character and kind must necessarily act through and by means of agents, yet the corporation is not bound to respond for every negligent act of those agents. The corporation owes to its employees certain positive and personal duties, such as seeing that they have safe and proper tools and other appliances to work with; that their fellow servants are carefully selected, and competent to perform the work

assigned them. And the company is bound to use ordinary care and diligence to see that these requisites are met. But there is no question before us upon these phases of a master's liability to the servant. As far as this record shows, the company has faithfully performed its duties to this plaintiff in these requisites. There is but the single question before us, were the plaintiff below and the other servants of the company, whose negligence caused the injury, fellow servants? If they were, then the ruling of the lower court was erroneous, and must be reversed. If they were not, then the verdict was proper, and the judgment must stand. It is now the recognized law of the land, both in the state and in the federal courts, that the master is not liable to a servant for the negligence of a fellow servant unless the negligence was caused by the personal wrong of the master, or his contributory negligence, in the given case. Farwell v. Railroad Co., 4. Metc. (Mass.) 49; Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. Rep. 322; Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. Rep. 184; Hough v. Railroad Co., 100 U. S. 213. The reason given for this exemption is thus stated by Chief Justice Shaw in Farwell v. Railroad Co., 4 Metc. (Mass.) 49:

"The general rule, resulting from considerations as well of justice as of policy, is that he who engages in the employment of another, for the performance of specified duties and services for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, and in legal contemplation the compensation is adjusted accordingly; and we are not aware of any principle which should except the perils arising from the carelessness and negligence of those who are in the same employment. These are perils which the servant is as likely to know, and against which he can as effectually guard, as the master. They are perils incident to the service,

and which can be as distinctly foreseen and provided
for in the rate of compensation as any other." It is
true that, both upon the grounds of logic and fact, the
reason, as here given, has been vigorously attacked;
the attack varying in intensity and completeness in
proportion to the feeling of antipathy which the writer
bore corporations, because of their greediness or heart-
lessness. But whether logically sound, or true in fact,
the reason of Chief Justice SHAW is still the basis upon
which the rule is generally founded. The difficulty has
not grown out of the unsoundness of the reason for the
rule, but out of the inability to apply the rule itself to
the infinite variety of facts which are constantly pre-
senting themselves. The question is, "Who, within
the sense of the rule, or upon grounds of public policy,
are to be deemed fellow servants in the same common
adventure or undertaking?" Hough v. Railway Co.,
100 U. S. 213. While many courts have essayed to
give certain criteria by which to solve the question here
presented, hardly any of acknowledged authority have
endeavored to lay down a hard and fast formula by
which all cases may be tested. The United States su-
preme court has refused to make any such attempt.
See the cases above cited. That court has been ex-
ceedingly conservative in its enunciation of general
rules. The same remarks apply to the majority of
state courts. The result was inevitable, therefore, that
the cases should be in irreconcilable conflict. It has
been held that the following persons were fellow serv-
ants: Foreman of a bridge gang, and servants of
operating train (Elliot v. Railroad Co., 5 Dak. 523,
41 N. W. Rep. 758); a section foreman and conductor
(Fagundes v. Railroad Co., 79 Cal. 97, 21 Pac. Rep.
437); a laborer employed to remove snow from the
track, and a conductor (Baughman v. Superior Court,
72 Cal. 573, 14 Pac. Rep. 207); a brakeman and con-
ductor of different trains (Van Wickle v. Railroad Co.,

32 Fed. Rep. 278); a track repairer and an engineer
(McMaster v. Railroad Co., 4 So. Rep. (Miss.) 59);
a section man, and an engineer or brakeman (Howard
v. Railway Co., 26 Fed. Rep. 837); a switchman of
one train, and the engineer of another train (Randall
v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. Rep. 322).
The number of cases might be greatly extended, but it
is unnecessary.   It will be noticed that the relation ex-
isting in each case is, in principle, the same as the relation
existing in the case before us, between the plaintiff, Mar-
tin, and the engineer or conductor of the work train.
In the Randall case, supra, the court says that for the
purposes of that case it was not necessary "to under-
take to lay down a precise and exhaustive definition of
the general rule in this respect, or to weigh the con-
flicting views which have prevailed in the courts of the
several states; because persons standing in such rela-
tion to one another as did this plaintiff and engineman
of the other train are fellow servants, according to the
very great preponderance of judicial authority in this
country, as well as the uniform course of decision in
the house of lords and the English and Irish courts."
And Judge GRAY, who delivered the opinion, cited a
long line of authorities sustaining the view taken by
the court.   Continuing, he said, referring to the serv-
ants in the case before him: "They are employed and
paid by the same master.   The duties of the two bring
them to work at the same place at the same time, so
that the negligence of the one in doing his work may
injure the other in doing his work.   The separate
services have an immediate common object,—the mov-
ing of trains.   Neither works under the orders or con-
trol of the other.   Each, by entering into his character
of services, takes the risk of the negligence of the other
in performing his service; and neither can maintain an
action for an injury caused by such negligence against
the corporation, their common master."   It seems to

me clear that the principle of this case fairly and squarely covers the facts in the case before us, upon that branch of it relating to the negligence of the conductor or engineer upon the work train, and, that being the utterance of the supreme court of the United States, we are bound by it. Whatever may be the exact status of the Ross case, 112 U. S. 377, 5 Sup. Ct. Rep. 184, and its authority, which we will consider later, it has no reference to the state of facts that existed between the plaintiff and the conductor and engineer of the work train. They were fellow servants, and, being such, the common master is not responsible in damages to the plaintiff for the negligence of such fellow servants. That negligence was part of the risk he assumed.

It was argued strenuously by counsel for defendant in error that as the work train and section men were under one common direction or employment, in the repairing of the road, and the common superintendent sent them to the place of work, it was his duty to see that the work train did not run down and kill the section men upon the hand car, and failing in so doing, and being the representative of the company,—its vice-principal,—the company is responsible for the negligence of the trainmen upon the work train. But in our judgment the record discloses no state of facts upon which such a contention can be predicated. The men upon the hand car were going to their work earlier than usual, and of their own volition. They were going, presumably, as they had been going for three months, over a line of railroad upon which were constantly passing trains. The work train was running in accordance with telegraphic orders, as to which orders there is no intimation of negligence, and the men upon the hand car knew that there was an order of the company providing: "Every man at work on the track must bear in mind that, in operating the road under telegraph orders, a train may pass at any moment." This abun-

dantly shows that there was no negligence upon the part of the company by reason of any negligence of a superior servant controlling the operations of the men upon both the work train and the hand car. No superior servant invited the men upon the hand car to go upon the railroad with any promise that the road would remain clear of trains until they reached their destination, and then telegraphed a work train to the same place to run the men to their death. It may be urged that the testimony does not show that the plaintiff below knew of the rule above set out. But the foreman did, and, if he negligently forgot to inform the plaintiff, it is such negligence as may be considered upon the question as to the company's liability for his negligent acts, but not upon the point now being considered.

We now come to the consideration of the question, was the relation existing between the foreman of the section hands and the plaintiff below that of fellow servant? There are numerous cases in the books holding that though the foreman is a superior in some matters, as, for instance, in direction of general work, and even in power to hire the men who work with him, he is simply a fellow servant in a different grade, and that the difference in grade does not destroy the relation of fellow servant, so as to bind the common master for the negligence of the foreman. Ell v. Railway Co., 48 N. W. Rep. (N. D.) 222; Olson v. Railway Co., 38 Minn. 117, 35 N. W. Rep. 866; Lindvall v. Woods, 42 N. W. Rep. (Minn.) 1020. In the last cited case the court say: "In Brown v. Railway Co., 27 Minn. 162, 6 N. W. Rep. 484, it was held that the difference in grade of employment, or in authority with respect to each other, does not remove employees from the class of fellow servants, as regards the liability of the master for the injuries to one caused by the negligence of the other; and in speaking, in that case, of the basis upon which this rests, it is said: 'If the servant is supposed

to assume the risks which the master, with due care and diligence, can not prevent,  *   *   *   then he assumes the risks from negligence of those servants who may be placed over him as superior servants or overseers, as well as those of equal grade with himself, for in respect to such overseers or superior servants the master, when he has used due care in selecting them, can not prevent their casual negligence, any more than he can prevent the casual negligence of those inferior in grade.'" The case of Ell v. Railway Co., supra, was that of a servant suing the company for the negligence of the foreman of the gang doing the work where the injury occurred. That case is a well considered one, and presents the argument in favor of the contention of the company with much learning and logical power. The court says: "The foreman, Withnell, through whose negligence it is insisted that plaintiff was injured, had control of the gang employed on the work, and was vested with authority to employ and discharge the men, who were subject to his direction and supervision. Hence, it is urged that he was in his position, and therefore, in the prosecution of the work of unloading these piles, a vice-principal, and not a fellow servant." It is noticeable that this case is almost on all fours with the one before us, and the contention is the same in both cases. The court, continuing, lays down the two rules representing the two doctrines by which courts have endeavored to ascertain, from a given state of facts, if the servants were fellow servants, and says: "Here lies the difference between the two rules. The cases which preserve the fellow servant rule in its full integrity bring the facts of each case to the test, not of the rank of the negligent servant, but of the character of the negligence from which the damage results. Did the master owe to his servant a duty as master? Answer the inquiry in the affirmative, and he can not escape a careless discharge of that duty by shifting the

burden to the shoulders of the servant, however infe-
rior his position may be.   The negligence of a fellow
servant has not wrought injury in such a case.   It is
the negligence of the master himself, because that was
carelessly done which he was bound to  have carefully
performed.   The master must use due care in  supply-
ing his servants with safe appliances, and in providing
them a safe place to  work.   These are duties of the
master.   They are none the less his duties because,
from the necessities of business, or for other reasons,
he confides their discharge to an employee.   His per-
sonal negligence in this respect  would create liability.
*   *   *   On the other hand, the other doctrine''—that
is, the doctrine that the master's liability is determined
by the station of the negligent servant—''is a limitation,
a very important limitation, of that rule.   It finds no
warrant in the cases which first enunciated that rule.
It rests on no subsequent legislation, and we are firm
in the conviction that the mere superiority in the rank
of the  negligent servant—his right to control the
servant injured, and to employ and to discharge  him—
calls for no, modification of the fellow servant rule.
The bed rock of that doctrine is that every employee
assumes the risk of his coemployees' negligence, as one
of the ordinary risks of his work.''

The court then enters into a clear and exhaustive
consideration of the reasons why the doctrine, as here
laid down, is correct in principle, and cites numerous
cases to show that a great preponderance of authority
is in favor of the doctrine as held by that court, and
then concludes as follows:   ''We believe that the fel-
low-servant rule should hedge about all masters, with-
out discrimination; that its wise and just barrier
against liability should not be broken down by a fic-
tion; that those whose business, from its very nature,
necessitates gradations of service, should not be
deprived of its protection on account of a distinction

which in no manner affects the considerations which gave it birth, and have led to its almost universal adoption. We see nothing to justify the limitation doctrine, except the increased safety of employees in a dangerous business; and this applies, if at all, equally to cases where the two servants are of the same grade.'' We have quoted thus fully from this case because the facts are quite similar to those in the case before us, and, further, because the learned judge has presented the reasons for the general rule in the most convincing manner possible. The rule thus ably set forth is the one adopted by the great majority of states, and having the indorsement generally [of the federal courts and the United States supreme court until, at least, the announcement of Railroad Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. Rep. 184; Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. Rep. 322. The doctrine as above laid down, however, had been rejected by the courts of Ohio, Michigan, Kentucky, and a few others; and in those jurisdictions the liability of the master had been gauged by the departmental test or the grade test, with a constantly growing tendency to increase the number and character of the departments or grades, and thus in fact annihilating the fellow servant doctrine, or making of it a barren abstraction. When the United States supreme court, in 1884, announced the doctrine of the Ross case, the legal profession and all masters were startled—not at the decision itself, for while, as to the facts in that case, even, it was a departure from the apparent direction of the doctrine of the case of Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. Rep. 322, yet, as applied to its facts, it was not devoid of justice; but the reasons and the citations of authorities both tended in the direction of the rule which was surely emasculating the fellow servant doctrine, and basing the master's liability solely upon negligence of any servant. The facts of the Ross case

were these: A freight train was going south upon the railroad, under the control of a conductor. A gravel train was coming north. At a station a few miles from the point where the two trains ought to pass, the conductor of the freight train received a telegram instructing him where to allow the gravel train to pass. He neglected to give the engineer the order, by reason of which there was a collision, and the engineer was injured. He sued the company for damages. The lower court gave the jury the following instruction: "It is very clear, I think, that if the company sees fit to place one of its employees under the control and direction of another, that then the two are not fellow servants engaged in the same common employment, within the meaning of the rule of law of which I am speaking." It must be conceded, if the court had fully indorsed that instruction, that in every case where one servant is under any control and direction of another the rule of fellow servant would not apply. The case before us would be one under the spirit of the Ross case. But the court very carefully limited its ruling to the alleged facts in that case. Justice FIELD says: "We agree with them [the courts of Ohio and Kentucky] in holding—and the present case requires no further decision—that the conductor of a railroad train, who commands its movements, directs when it shall start, at what stations it shall stop, at what speed it shall run, and has the general management of it, and control over the persons employed upon it, represents the company, and therefore that, for injuries resulting from his negligent acts, the company is responsible." The justice, in applying this rule, says the language of the construction may be open to verbal criticism. And it certainly is, for it takes no great acumen to see that the learned judge imports into the instruction a variety of facts not covered by the words of the instruction, "control and direction;" facts, too,

that must have been assumed, for it is a matter of common notoriety that no conductor has the authority or performs the acts set out in the quotation. In the very case itself, the negligence is predicated upon the failure of the conductor to deliver an order— not his order—from another and higher servant, without which he could not move the train a foot. The decision in this case was not agreed to by four of the justices, upon the ground that they thought the conductor and engineer fellow servants. However, the case stood as an authority for the principle that, in cases where one servant has any control or direction over another, the fellow servant doctrine does not apply; and if that is the meaning of the case, and it is now an authority for that view of this legal doctrine, then it is decisive of the case before us, as we are bound by the decisions of the supreme court of the United States.

But the plaintiff in error cites the case of Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. Rep. 914, as conclusive of the proposition before us, and that in its favor. This latter case is the latest utterance of the supreme court upon the fellow servant doctrine, and its authority, whatever it is, is decisive of the present case. The defendant in error insists that it does not change the doctrine announced in the Ross case, while the plaintiff in error insists that, if it does not change the doctrine there put forward, it interprets the holding to be in accordance with the view of the law which it contends for, and which it insists is the law of the federal jurisdiction. What, then, does the Baugh case hold, and what is its relation to the Ross case? Referring to the last question first, we remark that a previous decision of a court may be considered afterward in four separate phases: (1) It may be overruled and repudiated; (2) It may be made the basis of the second or other ruling, without more; (3) It may be

distinguished; and (4) it may be interpreted in accordance with the later and fuller discussion of the rule of law under consideration. The Baugh case plainly shows that neither the first nor second phase was pursued in reference to the Ross case. The discussion by Justice Brewer in the Baugh case shows that he was not attempting to discriminate the cases, for in principle they were too near alike, but that he was following the fourth method, and endeavoring to place its somewhat disturbing holding upon such a practical basis as the Baugh case was about to lay down. It would seem, therefore, that the doctrine as now held by the supreme court is to be found solely in the Baugh case and that it is unnecessary to further consider the Ross case; for, if that case is authority, it is so only because it harmonizes with the Baugh case. Differing from the usual course, the Baugh case is not an additional authority depending upon the Ross case, but the latter takes its efficacy because it has been interpreted by the law of the Baugh decision. Does the Baugh case sustain that view of the fellow servant doctrine held by the majority of courts, which base the fellow servant relation upon the character of the negligent act, rather than upon that of the grade or department of work? We think it does. It must first be noticed that this case decides that the question involved is one of general law, and not of local law. This is a very significant fact, for the reason that the case was first tried in the federal court of Ohio, and was decided in accordance with the decisions of that state. If, now, the question had been determined to have been one of local law, then those decisions would have been binding upon the supreme court, and there could have been no escape, excepting upon the theory that the question was one of general law. Justice Field, who wrote the decision, in the Ross case dissented in this (the Baugh case), and insisted that the question was peculiarly one of

local law.   In the Ross case we find that Justice
Field quoted to sustain his position upon the main
question the cases of Railroad Co. v. Stevens, 20 Ohio,
415; Railroad Co. v. Keary, 3 Ohio St. 201; and Rail-
road Co. v. Collins, 2 Duv. 114—(Kentucky cases)—
authorities, all which sustain the doctrine which takes
the minority view of the fellow servant doctrine.   It is
therefore significant of the direction in which the
Baugh case was to be decided that the court at once
cleared itself of the impediment of the Ohio cases.
The facts in the Baugh case were these:   The plaintiff,
Baugh, was employed by the railroad company as fire-
man on one of its locomotives.   The *locomotive was
manned by one Hite, as engineer, and the engine was
known as a "helper;" that is, it aided other engines in
hauling trains up steep grades, when, through with its
help, it returned to its starting point alone, under
direction of the train dispatcher, or following some
scheduled train.   On the day of the accident, the
"helper," without special orders, and not following
any scheduled train, started back and collided with a
regular train, and Baugh was injured.   Baugh had
worked for the company for six months, knew the
"helper" had to keep out of the way of trains, and was
familiar with the method of flagging back.   The court
instructed the jury as follows:   "If the injury results
from negligence or carelessness on the part of one so
placed in authority over the employee of the company
who is injured as to direct and control that employee,
then the company is liable."   This instruction is very
similar to the one in the Ross case, but is not so
broad as the one given by the lower court in this case.
The court, by Justice Brewer, say, in formulating the
results of the Ross case:   "The court, therefore, did
not hold that it was universally true that when one
servant has control over another they cease to be fellow
servants, within the rule of the master's exemption

from liability, but did hold that an instruction couched in such general language was not erroneous, when applied to the case of a conductor having exclusive control of a train, in relation to other employees of the company, acting under him, on the same train. The conductor was, in the language of the opinion, 'clothed with the control and management of a distinct department.' * * * It was this proposition which the court applied in the Ross case, holding that the conductor of a train has the control and management of a distinct department. But this rule can only be fairly applied when the different branches or departments of service are, in and of themselves, separate and distinct." The court further say that the various employees of large corporations "are not graded like steps in a staircase, those on each step being, as to those on the step below, in the relation of masters, and not of fellow servants, and only those on the same steps fellow servants, because not subject to any control by one over the other. Prima facie, all who enter into the employ of a single master are engaged in a common service, and are fellow servants, and some other line of demarcation than that of control must exist, to destroy the relation of fellow servant."

But the court goes further: "Therefore, so far as the matter of the master's exemption from liability depends upon whether the negligence is one of the ordinary risks of the employment, and thus assumed by the employee it includes all coworkers to the same end, whether in control or not." The court then lays down what it considers the proper test in such a case as the one before them, and which in principle is the same as the one we are considering. It is, "rightfully this: There must be some personal wrong on the part of the master—some breach of positive duty on his part." Justice BREWER proceeds then to show the reasonableness of this test, and, continuing, says:

"Therefore, it will be seen that the question turns rather on the character of the act than on the relations of the employees to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but, if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor." And finally the learned justice thus states the present position of the court: "It may safely be said that this court has never recognized the proposition that the mere control of one servant over another in doing a particular piece of work destroys the relation of fellow servants, and puts an end to the master's liability. On the contrary, all cases proceed on some breach of positive duty resting upon the master, or upon the idea of superintendence, or control of a department. It has ever been affirmed that the employee assumes the ordinary risks incident to the service, and, as we have seen, it is as obvious that there is risk from the negligence of one in immediate control as from one simply a coworker." We have thus quoted extensively from this case because we have thought that that case places the rule in its proper light more cogently than we could possibly have done. Now, bringing the facts of the case which we are passing on to the test of the principle laid down in this Baugh case, and it is too clear for controversy that the relation existing between the foreman of the gang of section men and the plaintiff below was one simply of fellow servants. True, he had a certain control over the servant, but it was not absolute in its character, nor was it such that he had to perform toward the servant any personal duty of the master. When the master had seen that the servant had proper appliances with which to work, when he had used proper care to select suitable coworkers with the servant, when he had fur-

nished the servant with proper rules to guide his conduct, the master had performed his personal duties to the servant. He was under no legal or moral obligation to furnish someone upon the hand car to keep a lookout for approaching trains. As the plaintiff below was injured by the negligence of a fellow servant, it was the duty of the court to have given the instruction requested by the plaintiff in error. Having refused so to do, it committed error, for which the judgment will have to be reversed, and the case remanded for a new trial.

FREEMAN and FALL, JJ. (concurring).—As we are governed by the decisions of the supreme court of the United States, and as we think the conclusions reached by Justice SEEDS are amply supported by the authorities cited, we concur. We are constrained to say, however, that the conclusion reached by a majority of the court in the Baugh case, 149 U. S. 368, 13 Sup. Ct. Rep. 914, does not commend itself to our judgment as either a sound or humane construction of the law governing the liability of the master for the negligence of servants placed in control of other servants.

O'BRIEN, C. J.—I dissent. The conclusion reached by the court rests upon the theory that the men operating the hand car and those operating the work train were fellow servants, and that their common master is not liable, under the evidence in this case, for the consequences of an injury inflicted by one upon the other. Even if conceded that they were fellow servants, I am of opinion that if the work train doing the damage left the depot at an improper time, by direction of, or in obedience to, rules of the common master, and that the injury to the plaintiff resulted therefrom, without any fault on his part, the common master is legally liable for the damages. It appears to me that these matters were properly submitted to and determined by the jury

in favor of the plaintiff.   If the broad doctrine enunciated in the opinion of the court is to prevail, the wisdom embodied in the maxim "respondeat superior" might as well be eliminated from our jurisprudence. My conviction is that there is no substantial error in the record, and that the judgment below should be affirmed.